Good morning, Your Honor. If it pleases the Court, I am the Appellant's Counsel and I am also the biological mother of J.W. and the legal guardian. This case involves the educational placement of an autistic child, in this case my son, and whether there were any substantive and procedural violations resulting from an IEP that occurred in that school year. There were obviously disagreements that resulted in an OAH hearing and a subsequent appeal to the U.S. Central District Court, and now this case is before this Court. A major issue that I would like to put forth before Your Honor would be that it concerns the definition of what an expert is in a special education hearing and the weight that is given to witnesses considered as experts by the administrative law judge and subsequently by the district, the Central District Court judge. In my opening brief, I did bring up case law and it pertains to the issue of whether it is an error of law, in fact, to immediately accord more credibility and weight to a witness purely because that witness works in the field of education. The opening brief pointed out that during the U.S. Central District Court hearing, the district court judge, quote, he stated, I actually consider all of those people who specialize in the education of autistic children to be experts in the field. So whether or not they are characterized as such, I give their opinion that kind of weight. But isn't there some, when he says he's talking about experts in the field of educating autistic children, he's saying they have experience beyond just being an educator, that they have experience and knowledge of how to educate someone with autism. And why doesn't that, I mean, even if they weren't designated an expert, why wouldn't their ALJ have been justified in according to the testimony of the more weight? Because, Your Honor, there were other experts that are considered experts by virtue of their years of exposure to children in the field of behavioral therapy, speech therapy, and also psychological assessments of the children. But in the OAH case, it appears very clear that there was an automatic assumption that just because you are in the field of education, you are accorded more weight than those who are also exposed to many years of, you know, dealing with autistic children. And also, what I believe is missing in this case is that what deems you an expert is also whether you're an expert in the child. Because each autistic child is different. There's a saying, if you meet one autistic child, you've only met one. You cannot say that, oh, I've dealt with so many, and therefore I have dealt with, you know, I know this child. Because the record shows that those who were considered experts by the appellant were not given much weight just because they're not in the field of education. And despite, say, the expert that deals with the child in the home behavioral therapy has academic degrees in psychology, that person supervises 40 hours of in-home behavioral therapy and knows the child based on 40 hours rather than the school district who only assessed the child for 25 minutes. So what I'm saying here is the definition of expert should not just be limited to, oh, just because you are in the field of education. You said the district judge said this, but did you mean the ALJ? The ALJ also pointed out that because you are in the field of education, that that expert knows, you know, the education system and therefore automatically assumes that the school knows best. Essentially what you have here is one person knows a lot about what's going to be available in the school and the other person knows a lot about the kid. Right. And you think they both would be worth whatever they're worth on the subject they're talking about. True, except my contention is the weighing of the weight. I believe that more weight was given just by virtue of them being in the education field. In my opening brief, I did mention there's this case that exactly discusses the problem. That's the OJ Unified School District v. Jackson case. It's a 9th Circuit 1993 case that basically states that the issue that they had was that just because the analysis of the appellant's witnesses were not credible, I mean, they were found to be not credible merely because they contradicted the district's witnesses. And in that case, the court found the interpretation to be flawed. And this case also stands for the proposition that giving deference only to school personnel based on their personal experience with the student and their perspective of the record would eliminate the need for a due process hearing. And in that case, the court also stated that the court agrees with the appellant and further notes that the ALJ's determination was arbitrary and could be changed. And in that case, the court also stated that the judge's decision was not appreciated because he did not apply that standard equally to the district's witnesses who were advocating for the district's program. What the judge was saying in that case was because the district's witnesses were found to also have an interest in showing their efforts as educators, you know, that their efforts as educators were effective. In other words... May I interrupt you just for a second? Yes. What remedy are you seeking here? I mean, obviously in these kind of cases, it's unfortunate that the passage of time means that your son has grown, that you've probably been through three or four more IEPs. What are you seeking here today? What we're seeking is a finding of what an expert is, because what an expert is... Well, in other words, how can this case affect what's happening to your child now? And I don't want to get off the record, but I also want to understand whether there are some subsequent activities that have made this mood or... What you really want us to do today? I want this case to be remanded for a proper assessment by the district court because... Well, let's assume that we remanded it and the district court then further said, well, the ALJ has to reopen it. Then at the end of that, what remedy would you want? We would seek a finding that the recommendation by the experts may not be sufficient. I think to cut to the quick, let's suppose you got a bringing opinion saying that your experts were better than their experts and that they were right and the other people were wrong and that in fact your child should have been... that the IEP was actually no good. Then what? I mean, this was all years ago. So what is it you want? We're seeking for reimbursement for the behavioral therapy because our child chose to stay home because in the midst of all this... So did you just seek home therapy and you want reimbursement for that? Is that where we are? Yes. Are you also seeking attorney's fees? Yes, also. I think we have your argument at hand. Do you want to save some time for rebuttal? Yes. All right. Very good. Good morning, Your Honors. Your Honors, may it please the Court, Christopher Knopf on behalf of the appellees of the East Reader City School District and their governing board. Your Honors, the appellants are taking issue with the ALJs and then later the district court's evaluation of weight of the expert. And based upon the authorities in our brief, it's clear the ALJ is in the best position to evaluate that credibility. But he did say that the reason was because their ear experts were educators and the parents weren't. He did say, as I recall, that the reason for the credibility decision wasn't that he thought they were, that your experts were more credible on usual credibility criteria, but rather that they were educators and knew the school program and the other people didn't. Didn't he say that? He, the ALJ, maybe it was a she. Was he a she? Yeah, the ALJ was a she, Judge Johnson. And in her opinion, Your Honor, she very carefully evaluated the testimony and the credentials of all the witnesses, whether they were a designated expert or in the district's case, every witness presented was a percipient witness. They were involved in the IEP meeting at issue. But they had seen a child for a very short amount of time. Absolutely. That's typical in these cases. And certainly we can't judge IDEA cases based on the amount of time with the kid. The IEP team is charged with what are the individualized needs of the child based on the assessed data. Well, isn't that typical? Because when you have children who are in school, the people in the school will know them. I'm sorry, Your Honor? When you have children who are in the school, which is most of the time, I think, those people actually know the child, but here they don't know the child. Well, that could be or it may not. It depends on the child that you were talking about. It could be a transfer in. They don't know the child. And certainly the parents know the child the best. And taking that argument... The parents don't have any particular expertise, but the people they have did have a relevant expertise, didn't they? They had an expertise based on a very narrow methodology. That's the ABA, the Applied Behavior Analysis. The psychologist, Lennington, who testified at the hearing, virtually almost always does assessments. She has no interaction in terms of the provision of educational services whatsoever. And therefore, the ALJ found that Dr. Lennington's testimony was less credible than an educator who sees assessed needs, whether it's JW or any other child with autism, looks at their ability levels, what they can and can't do, and the record establishes in the 73-page IEP is replete with data on what this child could and could not do. And the question before the ALJ was, does the IEP address the assessed data? Does it establish a set of goals that meet all the child's needs? And then ultimately, does the school district offer a program to meet those needs and provide some educational benefit underwriting? In the opinion's extensive, I must say, though, that that phrase jumped out at me, too, because I thought, well, you can say I accorded an expert more weight on this record, but to say, well, the expert's not an educator, and therefore I'm going to discount the testimony seemed a bit odd to me. I'm sorry, which testimony specifically? Because the ALJ actually accorded weight to the parents' witnesses in certain issues. I'm talking about the testimony of their consultant. Okay. And again, Your Honor, they had multiple. They had a speech person and they had a psychologist. I'm talking about the psychologist. His name escapes me. I discount the testimony of the psychologist because he or she, I can't recall which, is not an educator. What I believe the ALJ specifically said, Your Honor, is that the teachers, the teacher in question, as well as the school psychologist, two school psychologists that were on the IEP team, all of them had ample experience with students with autism with needs similar to those at J.W. And therefore, having that background, and as well as seeing kids operating in the preschool autism-focused classroom with needs similar to J.W.'s, they can make a reasonable conclusion that that program would be likely, reasonably calculated, in the words of the statute, to provide educational benefit to the student. And that's their obligation in this case. We certainly can't judge these cases on how much time a particular person has with the student, because then the parents would just dictate what programs the children would receive. In this case, Your Honors, the ALJ properly evaluated the case. I must say that I was somewhat surprised that they didn't have the child come to the school for a day and see how he did. Certainly. And that was part of the transition plan. No, I mean in assessing him. It does seem very odd to go out and look at a kid for a half hour in their classroom, in their home, and say, this kid could do fine in school. He didn't try him in school. The reason for that, Your Honor, is that you want to be able to assess the kid on what they can do. And to take that child, particularly a child with fairly severe autism as J.W., to take him out of the environment in which he's accustomed in doing his work, and putting him into an entirely different environment to evaluate him, would provide completely inaccurate results. What they did was completely … For example, they watched the kid for 25 minutes, and they said he didn't have any tantrums. Right? You know, maybe he doesn't have a tantrum in 25 minutes, but if he had been there for eight hours, maybe they would have seen a bit more. Your Honor, and if that was the exclusive universe of data that the school district had, perhaps the parent would have an argument. But that's not the case, Your Honor. What they also have is a ton of data kept by the in-home ABA provider that is in the IEP. The report from the PCFA, that contains all of the conclusions of the instances of tantrums, the instances of cooperation, and so forth. And it reduces it down to numbers. And the PCFA then proposed goals based on that data, and the IEP team considered that report, plus the speech provider's report, plus the input provided by the psychologist during the IEP meeting, plus a wealth of assessment data conducted the year prior at the initial psychoeducational assessment. And the ALJ notes that. There was already a wealth of information about this child. The question during the in-home observation was, how's he doing? And the team sent four different people to evaluate. They spoke with the providers for an hour and a half, and ultimately they got the report at the IEP meeting and discussed it. And notably, Your Honor, at the IEP meeting, there was no disagreement about the goals at the IEP meeting. The goals embody what the child's needs are. And there was no disagreement at the IEP meeting. There was discussion. There was discussion about whether a particular language program should be used in his speech therapy. But there was absolutely no disagreement, and accounts don't point to any. They take issue in terms of clarity of goals and so forth. But the full IEP, Your Honors, appear in the supplemental excerpts of record. The full IEP did not appear in the excerpts originally. We provide the entire thing for you to review, and it's 73 pages long. And it's filled with data. It's filled with present levels of performance. And it's filled with 18 different goals to address J.W.'s needs. And, you know, in the ALJ's eyes, and according to, you know, this court's precedent, the ALJ was in the best position to evaluate whether or not the conclusions reached by the IEP team were logical and appropriate, and they were reasonably calculated to provide educational benefit. And the ALJ, after eight days of hearing, decided, in fact, that's true. And in some cases she agreed with the parents' experts and said, you know, on the issue of the speech, they should have offered an extra hour per week of speech. Fair enough. We appealed that, as well as the award of the psychoeducational assessment for Dr. Lannington, and the district court judge didn't agree with us. And we have not appealed that up to this court. Do you agree with the present status of this? In other words, what we're talking about is reimbursement here, ultimately. Are there any current issues? Ultimately, no. No, Your Honor. It's reimbursement. The children have been in school since the decision. Wait. So J.W.'s been in school since the decision? It's not relevant to this proceeding, but that is the case. It hasn't been in school, so you're right. It has. So the reimbursement would be for what period? It would be for the one year starting in fall 2008 through the rest of that year. And, frankly, Your Honor, if I'm not mistaken, the district already paid for part of those services, and so it's really partial reimbursement that the parent's seeking. Do we know how much money is at stake? Off the top of my head, Your Honor, no. No? No. Okay. Unless Your Honor has any further questions, in our view, the parents did not raise any legitimate issues or cite to their excerpts of record. We tried to extrapolate arguments from their brief and had a difficult time doing so. And if there's any further concerns that you have, I'm happy to address them. Otherwise, the district will submit. Okay. Thank you very much. I realize it's not part of the record, but how much money is at stake here? Do you mind telling me? We're talking about close to $70,000 to $80,000. $73,000? Yes. Okay. And may I ask just a quick question?  He only transferred to school for a year. He transitioned to school the following year, not immediately after the decision. Okay. And have you resolved all other issues with the district? We have settlement agreements for speech therapy because of the decision. It's a long story, but we have settlement agreements. I don't want to know everything. I just want to get a snapshot of what the current situation is. So in rebuttal, I would state that I agree with Your Honors that there was a specific statement discrediting Dr. Lannington merely because she's not an educator. It is very clear in the record. And the district may point to why the school may be in a good position to make a decision, but there was specifically a discrediting on the basis of her not being an educator. And that, again, goes back to the O.J. case, which is why even have a hearing if the school is always going to be right merely because they're an education. The second issue relates to the fact that the district... I suppose, well, I mean, one possible answer is you could have had an expert who had experience as an in-class educator and had her go watch the class and then testify. Actually, we did. We have actually Dr. Lannington, she's not just an assessor of psychoeducational profiles. She actually works with the children by observing them at school as well. So I do feel that her full resume that was attached, it wasn't given the full credit that it deserved. And also the speech therapist that did the independent speech evaluation, she was a public school, you know, she was in the public school for 30 years as well. So she has seen many classrooms and she worked with children. Well, she essentially was credited, though, wasn't she? Sorry? She essentially was credited. Yes, she was found credible, but the psychologist was specifically discredited. Well, I mean, she wasn't found not credible in the sense that she was lying. She was found... Critical. I'm sorry? They thought she was critical, like overly critical, I mean, merely because they think that on what basis would she be criticizing if she's not an educator. That is the tone of the judgment, in my opinion, in my humble opinion. And also, Your Honor, I did notice that the appellee did mention that the Pacific Child, a company had summarized conclusions. It's true that the data was summarized, like as to how much he tantrums. So it appears that the data was accepted, but the recommendation was not, because based on the data, they're recommending that he stayed home. So it seemed to me that it was a selective choosing of what was accepted and what was not. So the data, obviously, based on hours of therapy, 40 hours a week, showed that level of problems. The recommendation automatically followed that they thought that he was not ready for school. So why was the data accepted, but the recommendation not accepted? So that, to me, is a disconnect. The other issue as to the appellee stating that there was no dispute as to goals, I would disagree because the record shows that there was disagreement over not only the clarity of the goals, but where the goals should take place, meaning that we thought that why were there classroom goals when we had already tried to explain that he wasn't ready for a classroom. So they were drafted in such a way that it automatically assumed that he was going to be in a classroom. And, therefore, you know, I don't – I respectfully disagree with the appellee. As to other factors, the other matters would then, you know, be raised already in my opening brief, and I submit on everything I've said so far. Thank you. Thank you very much for your argument. The case just heard will be submitted for decision.
judges: Thomas, Wardlaw, Berzon